Receipt number AUSFCC-10588197

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| LEIDOS, INC., | No. __**25-1203C**__ |
| Plaintiff, | |
| v. | |
| THE UNITED STATES OF AMERICA, | Judge _____ |
| Defendant. | |

**COMPLAINT**

Plaintiff, Leidos, Inc. ("Leidos" or "Plaintiff"), brings this action for damages and declaratory relief against the United States of America ("the government" or "Defendant"). under Contract No. N00039-20-D-0054 ("Contract"). For nearly five years, Leidos has provided the United States Department of the Navy ("the Navy") with the services required to run the Navy's enterprise-wide information technology networks. Exh. 1. The Performance Work Statement ("PWS") § 3.3.5.8(e) requires Leidos to maintain, configure, and deploy information technology service management and network management tools, Exh. 2. This PWS section corresponds to Contract Line Item Number ("CLIN") x033.[1]

---

[1] A CLIN structure is a systematic way to organize and price individual items or services within a government contract. Each CLIN acts as a unique identifier, detailing specific deliverables, quantities, units of measure, pricing, and the year ordered. *See* Department of Defense, Line Item Guide at 6 (2023) (hereinafter DOD Line Item Guide), available at https://www.acq.osd.mil/asda/dpc/ce/p2p/docs/transparency/DoD%20Line%20Item%20Guide.pdf. The first numeral (represented by x) indicates the contract year. For example, CLIN 0033 indicates that the services under this CLIN were ordered in the first contract year. Whereas the second year CLIN would be CLIN 1033.

The Contract states that the quantity, price, and maximum amount of Leidos' services for CLIN x033 are "undefined." Exh. 1 at 133. In other words, CLIN x033 is an undefinitized contract action that must be definitized. The Contract incorporates Defense Federal Acquisition Regulation Supplement (DFARS) 252.217-7027, Contract Definitization (Dec. 2012), which provides that once performance begins "[t]he Contractor agrees to begin promptly negotiating with the Contracting Officer the terms of a definitive contract." Exh. 1 at 206-7. The same clause provides that "[i]f agreement on a definitive contract action to supersede this undefinitized contract action is not reached," then the government may "determine a reasonable price or fee in accordance with subpart 15.4 and part 31 of the FAR, subject to Contractor appeal as provided in the Disputes clause." *Id.* at 207.

Such a dispute has now arisen. While the Contract was modified twice to "partially definitize" CLIN x033 for other subsections of PWS § 3.3.5.8, the Navy has refused to definitize the work Leidos has provided and continues to provide under subsection (e)—the maintenance, configuration, and deployment of tools.

The government's failure to pay Leidos for its services pursuant to PWS § 3.3.5.8(e) and CLIN x033 represents a breach of contract, and its failure to enter into good-faith negotiations towards definitizing Leidos' work represents a breach of the government's implied duty of good faith and fair dealing. Leidos seeks damages and declaratory relief to resolve the ongoing dispute and prevent it from recurring during the remaining life of the Contract with the government.

**JURISDICTION**

1.      This Court has jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), and the Contract Disputes Act 41 U.S.C. § 7104(a)(1) as the claim at issue arises from the final decision of a contracting officer under 41 U.S.C. § 7103 (a)(3).  On February 5, 2020, the Navy awarded Leidos the Contract.  On September 19, 2024, Leidos submitted a certified claim seeking $36,491,608.  Exh. 3.  And, on May 29, 2025, the Contracting Officer issued a Final Decision ("COFD") denying Leidos' certified claim.  Exh. 4.

2.      The remedies Leidos seeks are authorized by the Tucker Act, 28 U.S.C. § 1491(a)(1) and (a)(2), and the Contract Disputes Act, 41 U.S.C. § 7101 *et seq.  See Alliant Techsystems, Inc. v. United States,* 178 F.3d 1260, 1271 (Fed. Cir. 1999) (holding that declaratory judgments as well as monetary relief are permitted under the Court's Contract Disputes Act jurisdiction).

**PARTIES**

3.      Plaintiff Leidos, Inc. is a Delaware corporation with its principal place of business located at 1750 Presidents Street, Reston, Virginia.

4.      The United States of America, acting through the United States Department of the Navy, is the Defendant in this action.

**FACTUAL BACKGROUND**

**A.      The Procurement**

5.      The Navy operates one of the largest combined IT networks in the world, comprised of the Navy Marine Corps Intranet (NMCI), the Outside Continental United States ("OCONUS") Navy Enterprise Network (ONE-Net), the Marine Corps Enterprise Network ("MCEN"), and other legacy networks.  Together, NMCI, ONE-Net, and MCEN provide

secure end-to-end IT services to over 430,000 hardware devices and 650,000 users at over 1,600 sites in the continental United States, Hawaii, Alaska, Puerto Rico, and many OCONUS sites, varying from installations to single user locations.

6.     On October 18, 2018, the Navy issued Request for Proposals No. N00039-18-R-0005 ("the RFP").  Exh. 5.  The RFP was issued on an unrestricted basis and envisioned the award of a single indefinite-delivery, indefinite-quantity contract under which the Navy would issue fixed-price and cost-reimbursable task orders during a 5-year base period with three 1-year option periods.

7.     The PWS explained that the contractor would provide "services that implement an enterprise-wide capability for effective and integrated operations, oversight, responsibility, and accountability for the NMCI and the MCEN, incorporate the ONE-Net into a converged enterprise IT services business model, and support [Department of Defense] Agency/military department [ ] convergence to the same enterprise IT services business model albeit in separate management domains" for the Navy and Marine Corps. Exh. 2 at 1.  The NMCI and MCEN systems will each integrate operations within their respective management domains and align all current and future IT and cyber-enabled initiatives, while simultaneously allowing for end-to-end reporting, management, and defense of the DOD Information Networks.  *Id.* at 2-3.[2]

---

[2]  Contract services are divided into seven areas under the PWS: Productivity (3.3.1), User Support (3.3.2), Transport Services (3.3.3), Cloud Computing Services (3.3.4), Network Operations (3.3.5), IT Service Management (3.3.6), and Enabling Activities (3.3.7).

8.      Section C of the RFP set forth the CLIN structure.  Exh. 5 at 282.  CLIN x033 and subline item ("SLIN") x033AA,[3] NEN Tools Management, specifically referenced PWS Section 3.3.5.8:

| 0033 | NEN Tools Management | Contractor shall provide Tools management of Government and Contractor provided Tools in accordance with the following Section in the PWS: Tools and Data (3.3.5.8). All SubCLIN pricing shall include all required labor, material (e.g. Contractor furnished software and tools) and travel. |
|------|----------------------|---------|
| 0033AA | NEN Tools Management | Contractor shall provide Tools management of Government and Contractor provided Tools in accordance with the following Section in the PWS: Tools and Data (3.3.5.8) |

9.      PWS § 3.3.5.8 required the contractor to "provide an innovative solution, consisting of [Information Technology Service Management] and Network Management Tools…to operate and maintain the enterprise network."

10.     The Navy issued thirteen amendments to the RFP during the solicitation period. Relevant here, Amendment 12 (issued on August 16, 2019) revised the Master Tools Library (Attachment J-29) to significantly increase the amount of tools by 30%.  Exh. 5 at 28.  In response to Amendment 12, multiple questions were submitted noting that the substantial changes to the tools list would impact offerors' pricing.  Exh. 6.  The impact of this change was not just on the list of tools that the contractor would need to operate and maintain, but also the rationalization effort, which is the process of proposing more efficient/modernized alternatives, and an analysis of any licensing issues, all of which would affect an offeror's price. But proposals were due in less than a month from the date Amendment 12 was issued.

---

[3] "Each line item may be subdivided into separate unique subsets, called subline items (SLIN) using a parent-child structure. SLINs are used to facilitate tracking of performance, deliverables, payment, and contract funds accounting, or for other administrative purposes associated with a LIN." DoD Line Item Guide at 7.

11.     In response to these questions, the Navy represented that "a future amendment to the RFP will be issued stating that any tools included within attachment J-29 of the RFP will be covered by the inclusion of [a Not-to-Exceed] CLIN."  Exh. 6 at 1.  The Navy released Amendment 13 to the RFP, which converted CLIN x033 to an undefinitized CLIN and specifically added subsection (e) to PWS § 3.3.5.8, which set forth the contractor's obligations to maintain, configure, and deploy tools.

12.     Paragraph 3.3.5.8(e) required the contractor to "[m]aintain, configure, and deploy [Information Technology Service Management] and [Network Management Tool] capabilities to include but not limited to _tools_, application, sensors/probes, utilities, scripts, and repositories  in accordance with the [Interface Control Document]."  Exh. 2 at 129 (emphasis added).

13.     Enterprise tools encompass a wide range of software solutions, including tools, applications, sensors/probes, utilities, scripts, and repositories, designed to manage, monitor, and optimize critical infrastructure services.  These tools ensure performance, availability, and security, enabling efficient and reliable communication across the enterprise.  Enterprise tools play a vital role in troubleshooting issues, monitoring performance, ensuring security, and managing infrastructure.  They support the full lifecycle of provisioning, operating, maintaining, and improving IT Service Management (ITSM) and Infrastructure Management systems, driving operational excellence and reliability.

14.     In its notes explaining the changes to Section B (the RFP's schedule of CLINs), the Navy explained that CLINs 10AB, 10AC, 10AD, and 33AA were now "defined as an NTE."  Exh. 5 at 29.  The RFP as amended stated in multiple portions of its Section B that:

6

"The Not-To-Exceed prices in Section B will be definitized post award in accordance with DFARS 252.217-7027 in Section I." *Id.* at 287-88.

### B.    Contract Performance

15.    On February 5, 2020, the Navy awarded the Contract to Leidos.

16.    Section B of the Contract states that the maximum quantity, unit price, and maximum amount for CLIN x033 are "undefined." Exh. 1 at 133.

17.    The contract incorporates by full text DFARS 252.217-7027, Contract Definitization (Dec. 2012) ("the definitization clause"). The clause provides that:

> The Contractor agrees to begin promptly negotiating with the Contracting Officer the terms of a definitive contract that will include (1) all clauses required by the Federal Acquisition Regulation (FAR) on the date of execution of the undefinitized contract action, (2) all clauses required by law on the date of execution of the definitive contract action, and (3) any other mutually agreeable clauses, terms, and conditions. The Contractor agrees to submit insert type of proposal; e.g., fixed-price or cost-and-fee) proposal and certified cost or pricing data supporting its proposal.

Exh. 1 at 206-7.

18.    The definitization clause further provides that: "In any event, the Contractor shall proceed with completion of the contract, subject only to the Limitation of Government Liability clause." *Id.* at 207. The Limitation of Government Liability clause included in the Contract was not filled in by the Navy; it only included a "TBD" as the limitation of government liability. *Id.* at 178. Thus, Leidos was and still is contractually obligated to continue providing the tools maintenance, configuration, and deployment services to the Navy, even as the Navy refuses to compensate Leidos for that work.

7

19.    Additionally, the Navy left the schedule for definitizing the contract as "TBD." Leidos has attempted, since the first year of the Contract, to submit a proposal and enter into negotiations to definitize CLIN x033 in its entirety, which the Navy refused to do.

20.    Instead, the Navy chose to partially definitize CLIN x033 and demand that Leidos continue performing tools maintenance, configuration, and deployment services without definitizing the price for those services. Specifically, Modifications P00040 and P00064 each definitized portions of the work required under Paragraph 3.3.5.8's other subsections, but not subsection (e). *Id.* at 35, 70 (P00040 noting the modification left a "remaining undefinitized NTE ceiling balance" and P00064 noting "partial definitization").

21.    On April 23, 2024, Leidos submitted a Request for Equitable Adjustment ("REA") for $24,537,166 to compensate Leidos for performing tools maintenance, configuration, and deployment activities between August 1, 2021 and February 29, 2024.  The Navy did not formally respond to Leidos' REA, which caused Leidos to submit its certified claim on September 19, 2024.  Exh. 3.

22.    On April 23, 2025, the Navy unilaterally exercised the first option under the Contract, which will continue to require Leidos to perform tools maintenance, configuration, and deployment services.

23.    Leidos' actual costs (plus a reasonable profit) for tools maintenance, configuration, and deployment through June 6, 2025 have been $28,553,632.

24.    Leidos' projected costs (plus a reasonable profit) for tools maintenance, configuration, and deployment from June 7, 2025 until September 30, 2026 (the end of first Option) are $8,890,402.

25.    Leidos' REA preparation costs (plus a reasonable profit) totals $40,197.

8

## COUNT I
## DECLARATORY RELIEF

26.     Leidos realleges and incorporates by reference all of the allegations contained in the preceding paragraphs.

27.     As noted in the COFD, the Navy's position has been that tools maintenance, configuration, and deployment services do not fall under CLIN x033.  Exh. 4 at 2.

28.     But the Navy ignores that PWS § 3.3.5.8—including subsection (e)—is only referenced under CLIN x033 and in no other CLIN.  The Navy also ignores that PWS § 3.3.5.8(e) is the only place in the PWS that addresses maintaining, configuring and deploying tools.  Indeed, the Federal Circuit has held that where only one CLIN references a specific PWS section, in contrast to a generic CLIN covering all other services, the more specific CLIN applies.  *See LAI Servs., Inc. v. Gates*, 573 F.3d 1306, 1308-1310 (Fed. Cir. 2009) (holding that the plain language of the contract compels the conclusion that the CLIN that references the section of the PWS is the applicable CLIN).

29.     Declaratory relief is appropriate when "a live dispute [exists] between the parties," where "a declaration will resolve that dispute," and monetary damages cannot adequately do so.  *Alliant Techsystems, Inc. v. United States,* 178 F.3d 1260, 1271 (Fed. Cir. 1999).

30.     All three factors are met here.  First, a live dispute exists between the parties because performance is ongoing and the Navy continues to deny that CLIN x033 includes tools maintenance, configuration, and deployment services.

31.     Second, declaratory relief will resolve this dispute by rejecting the Navy's unreasonable contractual interpretation that tools maintenance, configuration, and deployment

are billed under other CLINs.  In awarding declaratory relief, the Court would enable the parties to negotiate full definitization of CLIN x033 to include tools maintenance, configuration, and deployment services for the remainder of the period of performance, to include any later exercised options.  In sum, this dispute over contract interpretation has prevented the parties from discussing the claimed amounts, and a declaration as to the appropriate CLIN to compensate Leidos for this work is central to resolving all issues in the case.

32.    Third, monetary damages are not an adequate remedy because Leidos does not yet have monetary damages for the last two option years that have not yet been exercised.  In other words, the monetary damages can only compensate Leidos for the base period and first option year, which the Navy unilaterally exercised.

33.    By reason of the foregoing, an actual and justiciable controversy exists between the parties, which may be resolved by a judgment or order of this Court. Under 28 U.S.C. § 1491(a)(2) and 41 U.S.C. § 7104(b)(1), this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto and to adjudicate the final rights of all parties and to give such other and further relief as may be necessary to enforce the same. *See Raytheon Co. v. United States*, 146 Fed. Cl. 469, 474 (2020) (holding that a "request for declaratory relief . . . falls within this Court's [CDA] jurisdiction").

## COUNT II
## DECLARATORY RELIEF

34.    Leidos realleges and incorporates by reference all of the allegations contained in the preceding paragraphs.

35.    As noted in the COFD, the Navy's alternative position is that Leidos "has no right to compensation beyond the NTE value identified under each period of performance[.]" Exh. 4 at 3.  *But see Ford Aerospace Corp.*, ASBCA No. 4719, 91-2 BCA ¶23,911 (1991) ("regardless of the label the Government chooses" in an undefinitized contract action "whether . . . 'not-to-exceed' price, or something else -- such amount is simply an 'estimated price,' to be negotiated by the parties into a firm fixed-price, and is not a ceiling on the amount that can eventually be negotiated") (remanding to require the Government to definitize the unpriced order).

36.    The final RFP stated: "The Not-To-Exceed prices in Section B will be *definitized* post award in accordance with DFARS 252.217-7027 in Section I."  Exh. 5 at 287-88 (emphasis added).  Based on the Navy's representation, Leidos entered into the Contract knowing that CLIN x033 was an undefinitized contract action that was set to be definitized after award.  Thus, the Contract left CLIN x033 as "undefined."  Exh. 1 at 133.  Consistent with the parties' understanding as to the "undefined" nature of CLIN x033, during performance, the Navy had begun to partially definitize CLIN x033.  *See id.* at 35, 70 (P00040 noting the modification left a "remaining undefinitized NTE ceiling balance" and P00064 noting "partial definitization").

37.    The Navy also ignores the fact that the Contract provides that both the schedule for definitizing the undefinitized CLINs and the Limitation of Government Liability Clause are both "TBD."  *Id.* at 178, 206-7.  The combined effect was to force Leidos to continue performing indefinitely with no limitation on the costs Leidos would incur while doing so, while leaving the Disputes Clause as Leidos' only path towards resolution.  DFARS 252.217-7027(c).

38.     Declaratory relief is appropriate here, too. *See Alliant Techsystems, Inc.,* 178 F.3d at 1271.  First, as with the declaratory relief requested in Count I, a live controversy exists because performance is ongoing and the Navy maintains its unreasonable position that Leidos' recovery is permanently limited by the "NTE" language.  Second, declaratory relief would prevent the Navy from continuing to assert this argument, including during later-exercised option years.  Here, as in Count I, this dispute over contract interpretation has prevented the parties from discussing the claimed amounts, and a declaration that the "NTE" language does not limit Leidos' recovery is also central to resolving the dispute.  Third, monetary damages are not an adequate remedy because Leidos does not yet have monetary damages for the last two option years that have not yet been exercised.

39.     By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this Court.  Under 28 U.S.C. § 1491(a)(2) and 41 U.S.C. § 7104(b)(1), this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto and to adjudicate the final rights of all parties and to give such other and further relief as may be necessary to enforce the same.  *See Raytheon Co.,* 146 Fed. Cl. at 474.

**COUNT III**
**BREACH OF CONTRACT**

40.     Leidos realleges and incorporates by reference all of the allegations contained in the preceding paragraphs.

41.     The Navy and Leidos are parties to a valid, enforceable contract.  Exh. 1.

12

42.     Because the Contract incorporates DFARS 252.217-7027, the Contract imposed a duty on the Navy to pay Leidos "a reasonable price or fee in accordance with subpart 15.4 and part 31 of the FAR" for its work under CLIN x033.  Exh. 1 at 206-7.

43.     The Navy breached the Contract by failing to either negotiate a full definitization of CLIN x033 or to pay Leidos a reasonable price or fee in accordance with subpart 15.4 and part 31 of the FAR for tools maintenance, configuration, and deployment services under PWS § 3.3.5.8(e).

44.     In doing so, the Navy has accepted Leidos' tools maintenance, configuration, and deployment services, not permitted Leidos to invoice for such services, and refused to pay Leidos for these services.  *See Westlands Water Dist. v. United States*, 109 Fed. Cl. 177, 193 (2013) ("A contract is breached when a party fails to perform a contractual duty when it is due."); *Hous. Auth. of Slidell v. United States*, 149 Fed. Cl. 614, 626 (2020) ("The failure to pay money when due and owing is a paradigmatic breach of contract claim.").

45.     As a result of this breach of contract, Leidos has suffered damages and will continue to suffer damages in an amount to be proven at trial.

**COUNT IV**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

46.     Leidos realleges and incorporates by reference all of the allegations contained in the preceding paragraphs.

47.     "The covenant of good faith and fair dealing is an implied duty that each party to a contract owes to its contracting partner…The duty applies to the government just as it does to private parties."  *Centex Corp. v. United States,* 395 F.3d 1283, 1304 (Fed. Cir. 2005).

13

48.     The nature of a party's duty of good faith and fair dealing "depends in part on what that [party's] contract promises (or disclaims)." *Bell/Heery v. United States*, 739 F.3d 1324, 1335 (Fed. Cir. 2014).  "[A] contract term which allows for future negotiation 'impliedly places an obligation on the parties to negotiate in good faith.'" *City of Tacoma v. United States*, 31 F.3d 1130, 1132 (Fed. Cir. 1994) (quoting *Aviation Contractor Employees, Inc. v. United States*, 945 F.2d 1568, 1572 (Fed. Cir. 1991)).

49.     By entering into a contract that included DFARS 252.217-7027, the Navy promised Leidos the opportunity to "begin promptly negotiating with the Contracting Officer the terms of a definitive contract" upon beginning contract performance.

50.     The Navy breached its duty of good faith and fair dealing by refusing to negotiate a definitization of PWS § 3.3.5.8(e) under CLIN x033 or reasonably compensate Leidos, even as Leidos spent considerable effort and expenses in meeting its contractual obligations under that CLIN.

51.     The Navy has instead denied the obvious facts that CLIN x033 was undefinitized at the beginning of contract performance and that no subsequent modification has definitized the work required by PWS § 3.3.5.8(e), even as Leidos has performed that work without compensation.

52.     As a result of the Navy's breach of its implied covenant of good faith and fair dealing, Leidos has suffered damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

Wherefore, Leidos respectfully requests this Court enter judgment in Leidos' favor as follows:

1. Declare that tools maintenance, configuration, and deployment activities, under PWS § 3.3.5.8(e) is properly billed to CLIN x033.

2. Declare that CLIN x033 is a partially undefinitized contract action with respect to tools maintenance, configuration, and deployment activities, performed under PWS § 3.3.5.8(e).

3. Declare that the "NTE" listed for CLIN x033 does not limit Leidos' claim for monetary relief for tools maintenance, configuration, and deployment activities, under PWS § 3.3.5.8(e).

4. Award damages sustained by Leidos in an amount to be proven at trial, to include: actual and projected costs (plus a reasonable profit) in performing work required by PWS § 3.3.5.8(e) from the beginning of contract performance until the end of the first option period; REA preparation costs (plus a reasonable profit) of $40,197; and Contract Dispute Act interest.

Dated: July 18, 2025

Respectfully submitted,

ROGERS JOSEPH O'DONNELL, P.C.

_/s/_____
Mark J. Linderman (Counsel of Record)
311 California Street, 10th Floor
San Francisco, CA 94104
(415) 956-2828
mlinderman@rjo.com

Cindy Lopez
Jules L. Szanton
1500 K Street, Suite 800
Washington, DC 20015
(202) 777-8950
clopez@rjo.com
jszanton@rjo.com

15